**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | _____<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor  _____ |
| 2. **Has this claim been acquired from someone else?** | ❑ No<br>❑ Yes.  From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| _____<br>Name | _____<br>Name |
| _____<br>Number        Street | _____<br>Number        Street |
| _____<br>City                        State                ZIP Code | _____<br>City                        State                ZIP Code |
| Contact phone  _____ | Contact phone  _____ |
| Contact email  _____ | Contact email  _____ |

Uniform claim identifier (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — — —

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ❑ No<br>❑ Yes.  Claim number on court claims registry (if known) _____        Filed on _____<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ❑ No<br>❑ Yes.  Who made the earlier filing? _____ |

Case 3:26-bk-02089    Doc    Filed 06/05/26    Entered 06/05/26 12:26:50    Desc Main
Document    Page 1 of 18

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

❏ No

❏ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $_____. **Does this amount include interest or other charges?**

❏ No

❏ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❏ No

❏ Yes. The claim is secured by a lien on property.

**Nature of property:**

❏ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

❏ Motor vehicle

❏ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

❏ Fixed

❏ Variable

**10. Is this claim based on a lease?**

❏ No

❏ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

❏ No

❏ Yes. Identify the property: _____

| | |
|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ❑ No<br><br>❑ Yes. *Check one:*                                  **Amount entitled to priority**<br><br>   ❑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).        $_____<br><br>   ❑ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____<br><br>   ❑ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____<br><br>   ❑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____<br><br>   ❑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____<br><br>   ❑ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.   $_____<br><br>   \*  Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. |

| Part 3: | Sign Below |
|---|---|

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>❑   I am the creditor.<br><br>❑   I am the creditor's attorney or authorized agent.<br><br>❑   I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br><br>❑   I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  _____<br>                  MM / DD / YYYY<br><br><br>_____<br>  Signature<br><br>**Print the name of the person who is completing and signing this claim:**<br><br>Name   _____<br>        First name        Middle name       Last name<br><br>Title   _____<br><br>Company   _____<br>     Identify the corporate servicer as the company if the authorized agent is a servicer.<br><br>Address   _____<br>     Number     Street<br><br>  _____<br>     City               State    ZIP Code<br><br>Contact phone  _____   Email  _____ |

## SUMMARY OF PROOF OF CLAIM CALCULATIONS
## FOR OLIVER C. CARMICHAEL, III

| | |
|---|---|
| Loan – Recorded Loan Agreement Principal: | $350,000.00 |
| Interest and Late Fees | $ 57,984.50 |
| Attorneys' Fees: | $ 29,162.50 |
| TOTAL CLAIM: | $437,309.50 |

## Certificate of Authenticity

I, James David Gibbs, do hereby make oath that I am a licensed attorney and/or the custodian of the original version of the electronic document tendered for registration herewith and that this electronic document is a true and exact copy of the original document executed and authenticated according to law on October 29, 2024.

_____
Affiant Signature

_October 10, 2025_
Date

```
Karen Johnson Davidson County
Batch# 1333156  AGRMTTRUST
10/10/2025 12:10:30 PM    14 pgs
Fees: $72.00  Taxes: $0.00
20251010-0081196
```

State of Tennessee

County of Williamson

Sworn to and subscribed before me this __10__ day of October, 2025.

_____
Notary's Signature

My Commission Expires: __07/01/2028__
                                    Date

Notary's Seal

KIMBERLY S. WILSON
STATE OF TENNESSEE NOTARY PUBLIC
WILLIAMSON COUNTY

**This document was prepared by:**
**James David Gibbs, Attorney**
**TN Bar Registration No. 028580**
**1061 Wilshire Way Brentwood, TN 37027**
**(615) 727-3286**

**EXECUTION VERSION** ·

## LOAN AGREEMENT

## KINGSLEY HOOPER AND HERON COVE, LLC

$350,000.00

October 29, 2024

FOR VALUE RECEIVED, HERON COVE, LLC, a Tennessee limited liability company ("Borrower") and KINGSLEY HOOPER, an individual resident of Nashville, Tennessee ("Guarantor") unconditionally promise to pay to the order of OLIVER C. CARMICHAEL III, an individual resident of Nashville, TN ("Lender") or at such other place as the holder of this instrument may designate in writing from time to time, the aggregate principal sum of Three Hundred Fifty Thousand DOLLARS ($350,000.00), together with interest thereon at the rate of ten percent (10%) per annum, compounded annually, plus the Profit Percentage provided for herein.

The parties hereby agree as follows:

1. Definitions.

As used herein, the following terms have the meanings herein specified:

"Acquisition Loan" means the first mortgage loan to Borrower in the amount of $3.2 million, extended to Borrower by BD Capital for the purpose of acquiring the real property described in Exhibit A on which the Project will be developed.

"Builder Deposit" means the deposit in the amount of $1.8 million, which deposit shall not accrue interest, an equal portion of which shall be repaid from the sale of each of the 164 lots included in the Project.

"Business Day" means any day other than a Saturday, Sunday or legal holiday on which commercial banks in Nashville, Tennessee are generally closed.

"Credit Documents" means, collectively, this Loan Agreement, the Guaranty, and all other agreements, documents, instruments and certificates, now or hereafter executed and delivered by and between Borrower and Lender in connection herewith or therewith, as the same may be amended, extended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time.

"Development Fees" means the amount to be funded by BD Capital to Borrower in the amount of $1,130,000.00 as the construction escrow to cover Borrower's Development Fees for the total site work required for the first 20 lots, including but not limited to roads, water, sewer and grading. The total Development Fees plus the Management Fee shall not exceed an average of $62,750 per lot.

"Dollars" and the sign "$" each mean freely transferable lawful money of the United States of America.

"Expenses" means all present and future expenses incurred by or on behalf of Lender in connection with this Loan Agreement or any other Credit Documents, whether incurred heretofore or hereafter, which expenses shall include, without being limited to, the reasonable fees and expenses of counsel for Lender and of any accountants or other experts and agents that Lender may incur in connection with (a) the documentation and administration of this Loan Agreement (b) the exercise or enforcement of any of the rights of Lender hereunder, or (c) the failure of Borrower to perform or observe any of the provisions hereof.

"Guarantor" means Kingsley Hooper, an individual resident of Nashville, Tennessee.

"Guaranty" means that certain Personal Guaranty executed by Guarantor in favor of Lender, as the same may be amended, extended, restated, supplemented or otherwise modified and in effect from time to time. The Guaranty is attached hereto as Exhibit B.

"Loan" means the Loan extended by Lender to Borrower in the principal amount of $350,000.00 plus interest thereon compounded annually at the rate of 10% per annum, made by Lender to Borrower. "Loan" also includes the payment(s) of the Profit Percentage provided herein.

"Material Adverse Effect" means a material adverse effect on (a) the ability of Borrower to perform its obligations under the Loan Agreement and Credit Documents to which it is a party or (b) the rights and remedies of Lender under this Agreement.

"Loan Agreement" means this Loan Agreement, as amended, extended, restated, supplemented or otherwise modified and in effect from time to time, and including all promissory notes and other instruments issued in exchange or replacement therefor or substitution or extension thereof.

"Management Fee" means $450,000 funded by BD Capital as a part of the Senior Lender Project financing to be paid to Borrower as a Management Fee in the amount of $2,743.90 per lot for each of the 164 lots in the Project.

"Payment in Full" or "Paid in Full" means the indefeasible payment in full in immediately available Dollars of the Loan (including interest accrued after the commencement of any Insolvency Proceeding irrespective of whether a claim for such interest is allowable in such Insolvency Proceeding), payment of the Profit Percentage and the termination of any obligation of Lender under the terms of this Loan Agreement.

"Person" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or government (including any division, agency or department thereof), and, as applicable, the successors, heirs and assigns of each.

"Profit Percentage" means 10% of the net proceeds of sale from each and every lot after the first 20 lots comprising Phase I of the Project, after the repayment of the Senior Lender, BD Capital, the costs of development (roads, water and sewer), and the principal amount of this Loan with accrued interest:

"Project" means a subdivision located in Mt. Juliet, Tennessee, which shall be subdivided to include 164 residential lots in total on 69.76 acres known as 0 Earhart Road, Mt. Juliet, Tennessee 37122. The legal description of the property where the Project will be developed is set forth in Exhibit A attached hereto and incorporated herein by reference.

"Triggering Event" has the meaning ascribed to that term in Section 9 of this Agreement.

2. Interest Rate; Maturity. From the date of the Loan and thereafter until repayment the applicable interest accrued on the unpaid Principal shall be compounded annually and computed on the basis of a year of three hundred sixty (360) days for the actual number of days (including the first day but excluding the last day) elapsed.

3. Payments. Interest shall be payable hereunder in accordance with the interest provisions contained herein. The entire principal balance of the Loan and all accrued and unpaid interest thereon, and all other sums payable by Borrower to Lender as the Profit Percentage or otherwise in connection with the Loan shall be due and payable in full as provided herein. Borrower shall cause the Settlement Agent for the sale of each lot to disburse at closing, directly to Lender out of Borrower's settlement proceeds, pursuant to Lender's written instructions, subject to Borrower's obligation to the senior lender, BD Capital, the Development Fees, the full principal amount of the Loan applicable to that lot, any unpaid interest thereon, and Lender's Profit Percentage, resulting from the closing of each lot sale after the first 20 lots constituting Phase I of the Project. Borrower agrees that no closing of the sale of any lot to which Agreement applies shall be deemed completed unless and until Settlement Agent makes disbursement in full to Lender as provided herein. After the sale of the Phase I lots, Development Fees to Borrower will not exceed $62,750 per lot, including any other fees paid to Borrower or Guarantor.

2

4. <u>Roads, Sewer, Water and Grading.</u> Lender acknowledges and agrees that Borrower owns a separate company which shall be engaged to construct the roads, sewer, water, grading and other site work required for the Project. Borrower and Lender shall mutually agree in writing upon a reasonable amount of profit to be earned by the Borrower's separate company for the performance of all site work, including but not limited to the construction of roads, water, sewer and grading. Borrower and Lender intend that there shall be sufficient funds remaining after completion of the first 20 lots constituting first phase of the Project to fund the construction of roads, water, sewer and grading for the remainder of the Project.

5. <u>Prepayment.</u> This Loan may be prepaid without penalty in whole or in part at any time.

6. <u>Representations and Warranties.</u> Borrower and Guarantor hereby represent and warrant to Lender that:

(a) <u>Ownership of the Project.</u> Borrower owns the Project free and clear of all Liens except for Liens in favor of BD Capital, as senior lender, and Liens in favor of taxing authorities with respect to the payment of federal and state transfer taxes. Borrower agrees that EXHIBIT A accurately and fully describes real property upon which the Project shall be developed and that it will not consent to increase the amount of any Lien in favor of BD Capital, or grant any other lien in favor of any other funding source without the prior written consent of Lender. Borrower further represents and warrants that there shall be no additional borrowing to complete the site work for the Project from and funding source other than BD Capital. Borrower further represents and warrants that there are no mechanics or materialmen's liens on the Project and that Borrower will ensure that there are no mechanics or materialmen's liens against the Project at any time while any obligation of Borrower under this Agreement is outstanding.

(b) <u>No Conflict.</u> The execution and delivery of and performance by Borrower under this Loan Agreement and each of the other Credit Documents to which it is a party: (a) are within its corporate powers; (b) are duly authorized; (c) are not in contravention of any applicable requirement of law or any indenture, contract, lease, agreement, instrument or other commitment to which it is a party or by which it or any of its properties are bound; (d) do not require the consent, registration or approval of any governmental authority or any other Person (except such as have been (or will be in the case of Uniform Commercial Code filings) duly obtained, made or given, and are in full force and effect); and (e) will not, except as contemplated herein, result in the imposition of any Liens upon the Project.

(c) <u>Enforceability.</u> This Loan Agreement and the Guaranty are the legal, valid and binding obligations of Borrower and Guarantor and are enforceable against them in accordance with its terms, except as such enforceability may be limited by (i) the effect of any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and (ii) general principles of equity.

(d) <u>Consents.</u> No consent or authorization of, filing with or other act by or in respect of, any governmental authority or any other Person is required in connection with the making of the Loan or with the execution, delivery, performance, validity or enforceability of this Loan Agreement, except for consents or authorizations that have been obtained or filings that have been (or will be in the case of Uniform Commercial Code filings) made and which, in each case, are in full force and effect.

(e) <u>No Judgments or Litigation.</u> No judgments, orders, writs or decrees are outstanding against Borrower or Guarantor nor is there now pending or, to the best of Borrower's and Guarantor's knowledge, threatened any litigation, contested claim, investigation, arbitration, or governmental proceeding by or against Borrower or Guarantor except for any such judgment, order, writ, decree, litigation, contested claim, investigation, arbitration or governmental proceeding that could not reasonably be expected, singly or in the aggregate, to have a Material Adverse Effect.

(f) <u>No Defaults.</u> Neither Borrower nor Guarantor is in default under any term of any indenture, contract, lease, agreement, instrument or other commitment to which Borrower or Guarantor is a party or by which Borrower or Guarantor is bound except for any default that could not reasonably be expected, singly or in the aggregate, to have a Material Adverse Effect.

3

Neither Borrower nor Guarantor knows of any material dispute regarding any such indenture, contract, lease, agreement, instrument or other commitment except for any such dispute that could not reasonably be expected, singly or in the aggregate, to have a Material Adverse Effect.

(g) Compliance with Law. Borrower is not in violation of any applicable requirement of law or any requirement of any self-regulatory organization in any material respect.

All representations and warranties of Borrower contained in this Loan Agreement shall survive the execution and delivery hereof.

7. Affirmative Covenants. Until Payment in Full, Borrower and Guarantor agree that:

(a) Existence. Borrower shall maintain its corporate existence.

(b) Further Assurances. Borrower shall take all such further actions and execute all such further documents and instruments as Lender may at any time reasonably determine to be necessary to further carry out and consummate the transactions contemplated by this Loan Agreement or the Credit Documents.

8. Negative Covenants. Until Payment in Full, Borrower and Guarantor agree that:

(a) No Liens. Borrower shall not directly or indirectly, mortgage, assign, pledge, transfer, create, incur, assume, suffer to exist or otherwise permit any Lien to exist on all or any part of the Project other than the Lien in favor of BD Capital as Senior Lender and Liens in favor of taxing authorities with respect to the payment of federal and state transfer taxes.

(b) No Sale. Borrower shall not directly or indirectly, sell, lease, assign, transfer or otherwise dispose of any part of the Project except in accordance with the terms hereof.

9. Triggering Events. The occurrence of any of the following events shall constitute a "Triggering Event" hereunder (whatever the reason for such event and whether it shall be voluntary or involuntary, or within or without the control of Borrower or effected by operation of law or pursuant to any judgment or order of any court or any order, rule or regulation of any governmental or nongovernmental body):

(a) Borrower fails to make (i) the payment of principal and interest due for the Loan pursuant to the terms hereof, or (ii) payment of any other amount due and payable under this Loan Agreement or any other Credit Documents, and such failure continues for five (5) Business Days; or

(b) any representation or warranty made by Borrower and Guarantor under this Loan Agreement or under any other Credit Document shall prove to have been incorrect or misleading in any material respect when made;

(c) Borrower fails to perform, comply with or observe any term, covenant or agreement applicable to it contained in Section 9 of this Loan Agreement; or

(d) Borrower fails to comply with any covenant contained in this Loan Agreement (other than under a provision covered by the foregoing clauses (a), (b) and (c) of this Section 9) or any of the other Credit Documents, which failure to comply is not cured thirty (30) calendar days after the earlier of the date that Borrower (i) receives notice from Lender of such failure or (ii) has actual knowledge of such failure; or

(e) dissolution, liquidation or winding up of Borrower, or the failure of Borrower to meet its debts as they mature, or the calling of one or more meetings of the major creditors of Borrower for purposes of obtaining a moratorium on payment or a compromise of such Borrower's debts; or

(f) the commencement by or against Borrower of any bankruptcy, insolvency, arrangement, reorganization, receivership, constructive trust or similar proceeding under any federal or state law and, in the event any such proceeding is commenced against Borrower, such proceeding is not dismissed within sixty (60) calendar days; or

(g) any covenant, agreement or obligation of any Person contained in or evidenced by any of the Credit Documents shall cease to be enforceable in accordance with its terms, or any party

4

This document was prepared by:
James David Gibbs, Attorney
TN Bar Registration No. 028580
1061 Wilshire Way Brentwood, TN 37027
(615) 727-3286

(other than Lender) to any Credit Document shall deny or disaffirm its obligations under any of the Credit Documents, or any Credit Document shall be canceled, terminated, revoked or rescinded without the express prior written consent of Lender, or any court or other Governmental Authority shall issue a judgment, order, decree or ruling to the effect that any of the obligations of any party to any Credit Document are illegal, invalid or unenforceable; or

(h) except as otherwise expressly permitted herein or in any of the other Credit Documents, Lender does not have or ceases to have a valid and perfected second priority security interest in the Project or any substantial portion thereof, behind only the Senior Lender's first priority debt.

Upon the occurrence of a Triggering Event, Borrower agrees that Lender may exercise any remedy available pursuant to any of the Credit Documents.

10. Reimbursement of Expenses. Borrower shall reimburse Lender for all Expenses as the same are incurred by Lender upon Lender's demand therefor.

11. Notices. All notices and other communications provided for hereunder shall be in writing and shall be mailed, facsimiled or delivered, if to Borrower, at the following address:

Heron Cove, LLC
℅ Kingsley Hooper
1316 4TH Ave N Nashville, TN 37208-2716
Nashville, Tennessee 37215

and, if to Lender, at the following address:

Oliver C. Carmichael III
4330 Sneed Road
Nashville, Tennessee 37215

with a copy to:

J. David Gibbs, Esq.
The West Bridge Group, PLLC
1061 Wilshire Way
Brentwood, TN 37027

or, as to each party, at such other address as shall be designated by such party in a written notice to the other parties complying as to delivery with the terms of this Section 11. All such notices and other communications shall be effective, (a) if mailed, when received or three days after deposited in the mails, whichever occurs first, (b) if facsimiled, on the date of transmission if transmitted before 4:00 p.m. (Nashville time), otherwise on the next Business Day, (c) if delivered by personal delivery, upon delivery, or (d) if delivered by overnight courier, one (1) Business Day after delivery to the courier (specifying one (1) Business Days' delivery), in each case, properly addressed.

12. SUBMISSION TO JURISDICTION; WAIVERS. BORROWER HEREBY IRREVOCABLY AND UNCONDITIONALLY:

(a) SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS LOAN AGREEMENT AND ANY OTHER CREDIT DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE NONEXCLUSIVE GENERAL JURISDICTION OF THE COURTS OF THE STATE OF TENNESSEE, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE DISTRICT OF TENNESSEE, IN EACH CASE LOCATED IN NASHVILLE,

5

This document was prepared by:
James David Gibbs, Attorney
TN Bar Registration No. 028580
1061 Wilshire Way Brentwood, TN 37027
(615) 727-3286

TENNESSEE, AND APPELLATE COURTS OF JURISDICTION FROM ANY THEREOF;

(b) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREES NOT TO PLEAD OR CLAIM THE SAME;

(c) AGREES THAT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR AFFECT THE RIGHT OF SUCH LENDER TO BRING ANY ACTION OR PROCEEDING AGAINST BORROWER OR GUARANTOR, OR ITS PROPERTY IN THE COURTS OF OTHER JURISDICTIONS; AND

(d) WAIVES DUE DILIGENCE, DEMAND, PRESENTMENT AND PROTEST AND ANY NOTICES THEREOF AS WELL AS NOTICE OF NONPAYMENT.

13 JURY TRIAL. BORROWER AND LENDERS EACH HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS LOAN AGREEMENT OR ANY OTHER CREDIT DOCUMENTS OR ANY OTHER AGREEMENTS OR TRANSACTIONS RELATED HERETO OR THERETO.

14. GOVERNING LAW. THE RIGHTS AND DUTIES OF BORROWER AND LENDERS UNDER THIS AGREEMENT (INCLUDING MATTERS RELATING TO THE MAXIMUM PERMISSIBLE RATE) AND THE OTHER CREDIT DOCUMENTS, AND THE VALIDITY, INTERPRETATION AND ENFORCEMENT THEREOF, SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS AND DECISIONS OF THE STATE OF TENNESSEE, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

15. Delays; Partial Exercise of Remedies. No delay or omission of Lender to exercise any right or remedy hereunder or under any of the other Credit Documents, whether before or after the happening of any Triggering Event, shall impair any such right or shall operate as a waiver thereof or as a waiver of any such Triggering Event. No single or partial exercise by Lender of any right or remedy shall preclude any other or further exercise thereof or preclude any other right or remedy.

16. Indemnification. Borrower and Guarantor hereby agree to indemnify, defend and hold harmless Lender and his respective trustees, agents, employees, counsel, advisors and affiliates from and against any and all losses, claims, damages, liabilities, deficiencies, judgments or expenses incurred by any of them (except to the extent that it is finally judicially determined to have resulted from their own gross negligence or willful misconduct) arising out of or by reason of any litigations, investigations, claims or proceedings which arise out of or are in any way related to (i) this Loan Agreement or the transactions contemplated hereby by and between Lender, Borrower and/or Guarantor, (ii) any actual or proposed use by any Borrower of the proceeds of the Loan Obligation; or (iii) Lender's entering into this Loan Agreement, the other Credit Documents or any other agreements, documents and instruments by and between Lender, Borrower and/or Guarantor relating hereto or thereto. If and to the extent that the Loan Obligations of Borrower hereunder are unenforceable for any reason, Borrower and Guarantor hereby agree to make the maximum contribution to the payment and satisfaction of such Obligations which is permissible under applicable law. Borrower's obligations hereunder shall survive any termination of this Agreement and any other Credit Documents and Payment in Full.

17. Nonliability of Lender. The relationship between Borrower and Lender is and shall be solely that of borrower and lender. Lender shall have no fiduciary responsibilities to Borrower or Guarantor. Lender undertakes no responsibility to Borrower or Guarantor to review or inform Borrower or Guarantor of any matter whatsoever.

18. Amendments, Waivers. No amendment or waiver of any provision of this Agreement or any other Credit Document, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender (and, in the case of amendments, Borrower), and each such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

6

**This document was prepared by:**
**James David Gibbs, Attorney**
**TN Bar Registration No. 028580**
**1061 Wilshire Way Brentwood, TN 37027**
**(615) 727-3286**

19. Counterparts. Delivery of an executed copy of this Loan Agreement by facsimile or email transmission shall be equally as effective as delivery of an original copy hereof.

20. Severability. In case any provision in or obligation under this Loan Agreement or other Credit Documents shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

21. Headings Descriptive. The headings of the several sections and subsections of this Loan Agreement are inserted for convenience of reference only and shall not in any way affect the meaning or construction of any provision of this Agreement.

22. Rights Cumulative. Each of the rights and remedies of Lender under this Loan Agreement shall be in addition to all of its other rights and remedies under this Agreement and applicable law.

**BORROWER:**

HERON COVE, LLC

By: _____
KINGSLEY HOOPER, MEMBER

**LENDER:**

_____
OLIVER C. CARMICHAEL, III

**PERSONAL GUARANTOR:**

_____
KINGSLEY HOOPER

7

This document was prepared by:
James David Gibbs, Attorney
TN Bar Registration No. 028580
1061 Wilshire Way Brentwood, TN 37027
(615) 727-3286

## EXHIBIT A

Being the same property conveyed to KDS Investments General Partnership, a Tennessee general partnership, from Wanda C. Baker, married and J. David Baker, by Warranty Deed recorded on March 31, 2016, in Instrument No. 20160331-0030671, Register's Office for Davidson County, Tennessee.

This is property with a common address of 0 Earhart Rd. (69.76 acres), Mt. Juliet, TN 37122; and further conveyed to Hooper Property LLC, a Tennessee limited liability company (the "Grantees"), by Special Warranty Deed recorded on March 3, 2022 in Instrument No. 20220303-0024375, Register's Office for Davidson County, Tennessee, that certain tract or parcel of land in Davidson County, State of Tennessee, being more particularly described as follows, to wit:

Beginning at an iron rod in the easterly right of way of Earhart Road, at the southwestern corner of the Phillip Sutton property as described in Deed Book 11252 Page 543 RODC., said point being the northwestern corner of the herein described tract;
Thence, leaving said right of way, with Sutton's south line, South 81 degrees 30 minutes 55 seconds East, 857.80 feet to an iron rod found;
Thence, North 08 degrees 26 minutes 51 seconds East, 174.48 feet to an iron rod;
Thence, South 82 degrees 45 minutes 06 seconds East, 259.89 feet to an iron rod found;
Thence, South 82 degrees 40 minutes 21 seconds East, 620.42 feet to an iron rod found;
Thence, South 83 degrees 50 minutes 09 seconds East, 174.57 feet to an iron rod;
Thence, South 81 degrees 17 minutes 42 seconds East, 588.22 feet to an iron rod found;
Thence, South 81 degrees 23 minutes 46 seconds East, 337.82 feet to an iron rod;
Thence, South 08 degrees 06 minutes 32 seconds West, 1822.28 feet to an iron rod found;
Thence, South 85 degrees 14 minutes 48 seconds West, 47.56 feet to an iron rod found;
Thence, North 81 degrees 09 minutes 28 seconds West, 302.255 feet to an iron rod found;.
Thence, North 81 degrees 02 minutes 43 seconds West, 293 .31 S feet to an iron rod;
Thence, North 84 de□s 03 minutes 54 seconds West, 195.89 feet to an iron rod found;
Thence, North 83 degrees 35 minutes 27 seconds West, 208.205 feet.to an iron rod found;
Thence, North 07 degrees 50 minutes 46 seconds Ea.□ 900.13 feet to an iron rod found;
Thence, North 83 degrees 42 minutes 38 seconds West, 899.75 feet to an ir□n rod found;
Thence, North 08 degrees 02 minutes 10 seconds East, 209 .17 feet to an iron rod;
Thence, North 08 degrees 02 minutes 05 seconds East, 149.37 feet to an iron rod found;
Thence, North O& degrees 22 minutes 42 seconds East, 144.08 feet to an iron rod at the northeast corner of the Albert Rychen property as described in Deed Book 5663 Page 701 RODC;

Thence, with Rychen's north line, North 82 degrees 29 minutes 27 seconds West, 900.00 feet to an iron rod in the easterly right of way of Earlian Road;

Thence, with said right of way, North 07 degrees 24 minutes 45 seconds East, 1?i.67 feet to an iron rod;

Thence, with ·3 curve to the right having a Delta Angle of 12 degrees 35 minutes 36 seconds, a Readiug of 539.50 feet, an Arc Length of 118.58 feet, a Chord Bearing of North 13 degrees 42 minutes 33 seconds Ea!t, and a Distance of 118.345 feet to the point of beginning and containing 69.867 acres.
According to a survey by Steve Delle, Delle Land Survey Company, Inc., dated February 6, 2007, TN License #1 710.

8

This document was prepared by:
James David Gibbs, Attorney
TN Bar Registration No. 028580
1061 Wilshire Way Brentwood, TN 37027
(615) 727-3286

**EXHIBIT B**
**PERSONAL GUARANTY**

**GUARANTY**

**FOR VALUE RECEIVED**, and in consideration of credit given or to be given, advances made or to be made, or other financial accommodation from time to time afforded or to be afforded to **HERON COVE, LLC**, a Tennessee limited liability company ("Debtor"), by **OLIVER C. CARMICHAEL III**, an individual resident of Tennessee or his successors, endorsees, transferees, and assigns (all of which are hereinafter called "Lender"), the undersigned, **KINGSLEY HOOPER** ("Kingsley Hooper"), referred to herein as the "Guarantor"), hereby guarantees the full and prompt payment and performance to Lender at all times hereafter of the following effective as of the 30th day of October, 2024 (the "Effective Date"):

(a)     All indebtedness and obligations of Debtor now or hereafter evidenced by or owing pursuant to that certain Loan Agreement in the principal amount of $350,000.00 executed by Debtor to Lender dated as of even date herewith (the "Loan"), whether principal, interest, or otherwise;

(b)     All indebtedness and obligations of Debtor now or hereafter evidenced by or owing pursuant to any and all other instruments and documents now or hereafter evidencing or securing the indebtedness and obligations owing by Debtor to Lender pursuant to the Loan Agreement;

(c)     The full and prompt payment of all costs and expenses of whatever kind and nature incident to collection of the indebtedness evidenced by any of the foregoing, the enforcement or protection of any rights of Lender thereunder, and the exercise by Lender of any rights and remedies thereunder, including, but not limited to, the payment of reasonable attorneys' fees;

(d)     The full and prompt payment and performance of any and all other indebtedness and obligations now or hereafter owing by Debtor to Lender, including, but not limited to, all future advances, whether direct, indirect, contingent, or matured, whether incurred as endorser, guarantor, surety, maker, or otherwise, and whether now existing or hereafter arising; and

(e)     All extensions, modifications, and renewals of any of the foregoing.

(All of the foregoing are herein collectively called the "Indebtedness").

**IN ADDITION, GUARANTOR SHALL BE LIABLE FOR ALL INTEREST ACCRUING ON THE PRINCIPAL GUARANTEED HEREUNDER, ALL REASONABLE ATTORNEYS' FEES, AND ALL REASONABLE COSTS OF COLLECTION, ENFORCEMENT, OR PROTECTION OF LENDER'S RIGHTS HEREUNDER.**

9

This document was prepared by:
James David Gibbs, Attorney
TN Bar Registration No. 028580
1061 Wilshire Way Brentwood, TN 37027
(615) 727-3286

This guaranty shall be continuing, absolute, and unconditional and shall apply to and cover all renewals, extensions, and modifications of the Indebtedness. Guarantor further covenants and agrees as follows:

1.      Lender is hereby expressly authorized to make, from time to time, without notice to anyone, any extensions, renewals, sales, pledges, surrenders, compromises, settlements, releases, indulgences, alterations, substitutions, exchanges, amendments, modifications, or other dispositions of all or any part of the Indebtedness, either express or implied, or of any contracts or instruments evidencing any thereof, or of any security or collateral therefor, and/or to take any security for or other sureties or guaranties upon any of the Indebtedness, and the liability of Guarantor shall not be in any manner affected, diminished, or impaired thereby or by any lack of diligence, failure, neglect, or omission on the part of Lender to make any demand or protest, to give any notice of dishonor or default, or to realize upon or protect any of the Indebtedness or any collateral or security therefor, or to exercise any lien upon or right of appropriation or set-off of any monies, accounts, credits, or property of Debtor possessed by Lender towards the liquidation of the Indebtedness or by any application of payments or credits thereon.

2.      Lender shall have the exclusive right to determine how, when, and what application of payments and credits, if any, shall be made on the Indebtedness or any part thereof and shall be under no obligation, at any time, to first resort to, make any demand on, file claim against, or exhaust its remedies against Debtor or any other persons or entities or their properties or estates or to resort to or exhaust its remedies against any collateral, security, property, lien, or other rights whatsoever. It is expressly agreed that after any default in any of the Indebtedness, including, but not limited to, any Event of Default as defined in the Loan Agreement, or after maturity, Lender may at any time make demand for payment on or bring suit against Guarantor and/or any other party liable for all or any portion of the Indebtedness, jointly or severally, or any one or more of such parties or less than all parties and may compound with Guarantor and any other guarantors or sureties of the Indebtedness for such sums or on such terms as Lender may see fit and release any of such parties from all further liability to Lender hereunder and may release any collateral which now or hereafter may stand as security for the Indebtedness or any portion thereof without thereby impairing the rights of Lender in any respect to demand, sue for, and collect the balance of the Indebtedness from any of such parties not so released and that any claims against Debtor accruing to Guarantor by reason of payments made hereunder shall be subordinate to any indebtedness then or subsequently owed by Debtor to Lender.

3.      As security for the undertakings and obligations of Guarantor hereunder, Guarantor expressly grants and gives to Lender a right of set-off, without demand or notice, of the balance of every deposit account or savings account now or at any time hereafter existing of Guarantor with Lender and a general lien upon all money, negotiable instruments, commercial paper, notes, bonds, stock, credits, and/or choses in action or any interest therein and any other property, rights, and interests of Guarantor or any evidence thereof which are in the possession, custody, or control of Lender, and, in the event of default hereunder, Lender may sell or cause to be sold at public or private sale in any manner which may be lawful, for cash or credit and upon such terms as Lender may see fit, and without demand or notice to Guarantor, all or any of such

**This document was prepared by:**
**James David Gibbs, Attorney**
**TN Bar Registration No. 028580**
**1061 Wilshire Way Brentwood, TN 37027**
**(615) 727-3286**

security, and Lender or any other person may purchase such property, rights, or interests so sold and thereafter hold the same free of any claim or right of whatsoever kind, including any right or equity of redemption, of Guarantor, such demand, notice, or right or equity of redemption being hereby expressly waived and released.

4. The following are expressly waived by Guarantor: notice of the incurring of any Indebtedness by Debtor, acceptance of this guaranty by Lender, presentment and demand for payment, protest, notice of protest, and notice of dishonor and non-payment of any instrument now or hereafter evidencing all or any part of the Indebtedness, any right to require suit or legal action against Debtor or any other party prior to enforcing this guaranty, any right to have security applied prior to enforcing this guaranty, and any right of subrogation to Lender's rights against Debtor until the Loan and other obligations are paid in full.

5. This is a guaranty of payment and performance. The liability of Guarantor hereunder shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Debtor or any other person available to Lender. Guarantor hereby waives any right to require that an action be brought against Debtor or any other person or to require that resort be had to any collateral in favor of Lender prior to discharging its obligations hereunder. Guarantor further waives any right of Guarantor to require that an action be brought against Debtor under the provisions of Title 47, Chapter 12, Tennessee Code Annotated, as the same may be amended from time to time.

6. In the event of the dissolution, liquidation, insolvency (however evidenced) of, or institution of bankruptcy or receivership proceedings by or against Debtor or any constituent, guarantor, or surety of Debtor for all or any part of the Indebtedness, all of the Indebtedness of Debtor then existing shall, for the purposes of this guaranty and at the option of Lender, immediately become due and payable from Guarantor. In such event, any and all sums or payments of any nature which may be or become due and payable by Debtor to Guarantor are hereby assigned to Lender and shall be collectible by Lender, without necessity for other authority than this guaranty, until all such Indebtedness of Debtor to Lender shall be fully paid and discharged, but such collection by Lender shall not in any respect affect, impair, or diminish any other rights of Lender hereunder.

7. Lender may, without any notice whatsoever to anyone, sell, assign, or transfer all or any part of said Indebtedness, and, in that event, each and every immediate and successive assignee, transferee, or holder of all or any part of said Indebtedness shall have the right to enforce this guaranty, by suit or otherwise, for the benefit of such assignee, transferee, or holder, as fully as though such assignee, transferee, or holder were herein by name given such rights, powers, and benefits.

8. In the event Lender is required by order of a court or other judicial or administrative authority at any time to refund or repay to any person for any reason any sums collected by it on account of the obligations subject to this guaranty, Guarantor agrees that all such sums shall be subject to the terms of this guaranty and Lender shall be entitled to recover such sums from Guarantor notwithstanding the fact that this guaranty may have previously been

11

Case 3:26-bk-02089 Doc Filed 06/05/26 Entered 06/05/26 12:26:50 Desc Main
Document Page 16 of 18
20251010008̷1196

**This document was prepared by:**
James David Gibbs, Attorney
TN Bar Registration No. 028580
1061 Wilshire Way Brentwood, TN 37027
(615) 727-3286

returned to Guarantor or that Guarantor may have previously been discharged from further liability under this guaranty.

9. No act or omission of any kind or at any time on the part of Lender in respect of any matter whatsoever shall in any way affect or impair this guaranty. This guaranty is in addition to and not in substitution for or discharge of any other guaranty held by Lender.

10. This guaranty and every part thereof shall be binding upon Guarantor and upon the respective heirs, legal representatives, successors, and assigns thereof as fully as though everywhere specifically mentioned and shall be construed according to the laws of the State of Tennessee. Guarantor shall pay all costs and expenses incurred in connection with the collection of sums due hereunder and the enforcement and protection of Lender's rights hereunder, including, but not limited to, reasonable attorneys' fees. Where the circumstances require, the singular shall refer to the plural, the plural to the singular, and the use of any gender shall be applicable to all genders. This guaranty is severable such that the invalidity or unenforceability of any provision hereof shall not affect or impair the validity or enforceability of the remaining provisions.

11. **GUARANTOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, BASED HEREON OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO OR ACCEPTING THIS GUARANTY. FURTHER, GUARANTOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. ANY ACTION BROUGHT HEREUNDER OR WITH RESPECT TO THE SUBJECT MATTER HEREOF MUST BE BROUGHT IN THE STATE COURTS SITTING IN DAVIDSON COUNTY, TENNESSEE OR IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE WHICH SHALL HAVE EXCLUSIVE JURISDICTION AND VENUE OF ANY SUCH MATTERS.**

*{Signature pages to follow}*

This document was prepared by:
James David Gibbs, Attorney
TN Bar Registration No. 028580
1061 Wilshire Way Brentwood, TN 37027
(615) 727-3286

**IN WITNESS WHEREOF**, this guaranty has been executed effective as of the Effective Date.

**GUARANTOR:**

_____
Kingsley Hooper

STATE OF TENNESSEE        )
COUNTY OF DAVIDSON     )

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, **KINGSLEY HOOPER**, with whom I am personally acquainted (or proved on the basis of satisfactory evidence), and who acknowledged that he executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this __11__ day of ~~October, 2024~~ December 2024.

_____
Notary Public

My Commission Expires: __01|07|2025__